UNITED STATES of America, Plaintiff–Appellee,

v.

Carlos SIMON, Defendant–Appellant.

No. 90–5619.

United States Court of Appeals, Eleventh Circuit.

July 1, 1992.

Steven Wisotsky, Ft. Lauderdale, Fla., for defendant-appellant.

Linda Collins Hertz, Alice Ann Burns, Lynne W. Lamprecht, Miami, Fla., for plaintiff-appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and HILL, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this appeal, we affirm the appellant's conviction because even if the prosecutor made improper argument to the jury, the error was harmless.

## I. FACTS

In early January, 1985, Richard Caride, a policeman for the city of Hialeah, Florida, told his fellow police officer and good friend Carlos Simon, the appellant in this case, that he had engaged in a home invasion robbery with Luis Perez. According to Caride, during the robbery, he and Perez had posed as police officers and obtained substantial amounts of money and drugs from a drug dealer named Miriam Baydes. About a week after the Baydes robbery, Perez's associate, Kenny Butler, informed him that Michael Corso also kept drugs and money in his home. Caride brought Simon to Perez's house about the same time Perez got this information. Perez, Simon, and Caride agreed that they would rob Corso and that Simon would serve as a look-out during the robbery. They decided to rob Corso on Sunday, January 27, 1985, with Perez and Caride posing as internal affairs investigators investigating a fight between Simon and Caride at Corso's club, in order to gain entry into the house. They also agreed to divide the robbery proceeds equally between Simon, Caride, Perez, Butler, and Butler's friend who had supplied the information about Corso.

On Sunday, January 27, Perez rode with Caride to the Corso residence, and Simon

drove his automobile, which he parked a half block away. Once inside the Corso residence, Caride and Perez told Del Panta, the woman who answered the door, that they were investigating narcotics violations and asked her if they could search the house. She consented to the search. During the search, Perez found Corso hiding in the master bedroom closet, and Caride called Simon on the police radio and told him to come inside.

Caride and Simon then completed the search the house while Perez stayed in the bedroom with Corso and Del Panta. Upon realizing that Corso did not have drugs or money in the house, Perez, Caride, and Simon met to decide what to do. Caride and Perez wanted to leave, but Simon indicated that he did not want to leave any witnesses behind because they were involved in an armed robbery. Simon took Perez's .22 caliber pistol with a silencer, walked into the bedroom, and started shooting. After Simon had fired eight or nine shots with the .22 caliber pistol, Corso and Del Panta were still screaming and moving. Simon then pulled his .45 caliber automatic pistol and shot Corso and Del Panta in the backs of their heads. Perez and Caride then left the house in one automobile and Simon in another automobile. After they had driven a short distance, Simon called Caride on the radio and asked him to pull over so he could change clothes in Caride's automobile because Simon's wife and son were waiting to go to the movies. He left his bloody clothes in Caride's automobile and proceeded directly to the movies.

Two or three days later, Caride met Simon at Perez's house and told him that he had changed the pistol's barrel, polished the extractor, and changed the firing pin to prevent the pistol from being matched ballistically with the shell casings.

The police discovered the bodies of Corso and Del Panta in the early morning hours of February 8, 1985. They found 10 shell casings in the master bedroom, 8 from a .22 caliber automatic weapon and 2 from a .45 caliber automatic weapon. On March 2, 1985, the police arrested Caride, Simon, and Perez. On March 19, 1985, the state of Florida filed an indictment against Simon, Caride, and Perez in the Circuit Court of Dade County. Caride pleaded guilty and cooperated with the police by telling the whole story. In September, 1985, in a separate trial, a jury acquitted Simon in spite of Caride's testimony against Simon.

After his acquittal, Simon filed an unemployment compensation claim against the City of Hialeah for wrongful discharge from the city's police force. On February 28, 1986, at his unemployment compensation hearing, Simon testified about and was questioned extensively about any involvement in the murders of Corso and Del Panta. Simon admitted that he had owned some .45 caliber weapons, but denied owning one at the time of his arrest on March 2, 1985, and at the time of the hearing. Additionally, he denied having ever removed the barrel, extractor and firing pin from any .45 caliber weapon, and stated that he did not know how to perform these tasks.

On October 27, 1988, Simon reported that his .45 caliber pistol bearing serial number 70817133 had been stolen from his automobile. He also filed an insurance claim for this weapon, describing it as a Colt Government Model .45, Series 70, serial number 70817133, with a blue finish and custom work including a polished hammer ramp and barrel, a new extractor, and a new ejector. At the scene of a robbery, on August 7, 1989, the Miami Police Department recovered a blue steel Colt .45 automatic pistol with Serial No. 70B17133 instead of Serial No. 70817133 which Simon had reported stolen. The police determined that the pistol they recovered had been registered to Simon in both state and federal firearms records since July 9, 1982. Simon's pistol was identified as the one which fired the bullet shell casings found at the murder scene of Corso and Del Panta. Since only the breach face marks matched from the pistol, an expert determined that the barrel and the extractor had been changed sometime after the casings had been fired from the pistol in 1985.

On December 5, 1989, a grand jury indicted and the United States Attorney prosecuted Simon for the following four offenses: (1) a conspiracy to violate the constitutional rights of Corso and Del Panta, which conspiracy resulted in their deaths, in violation of 18 U.S.C. § 241; (2) while acting under color of law as a Hialeah police officer, Simon willfully deprived Corso of his constitutional rights to be secure in his person and property, in violation of 18 U.S.C. § 242 and 18 U.S.C. § 2; (3) while acting under color of law as a Hialeah police officer, Simon wilfully deprived Del Panta of her constitutional rights to be secure in her person and property, in violation of 18 U.S.C. § 242 and 18 U.S.C. § 2; (4) Simon, in violation of 18 U.S.C. § 924(c), knowingly and willfully used and carried a firearm, a .45 caliber handgun, while violating the constitutional rights of Corso and Del Panta.

The case was tried to a jury. Simon maintained his alibi defense that he had taken his wife and his son to the movies on the afternoon of January 27, 1985. As part of his alibi defense, Simon asserted that Caride, who was trusted in his home, must have surreptitiously taken his .45 caliber pistol for the Corso robbery.

At trial, the defense counsel complained of the prosecution's repeated interrogations on the failure of Simon, his family, or his counsel to produce Simon's pistol. The district court refused to give the jury the instruction that "a suspect is not under any legal duty to come forward with exculpatory evidence." At the end of closing argument, as throughout the trial, defense counsel made motions for mistrial based upon the prosecution's repeated references to the failure of Simon and his family to produce the pistol as exculpatory evidence. The court denied these mistrial motions.

The jury found Simon guilty on Count I, conspiracy, and acquitted him on all other counts. The district court sentenced Simon to a term of thirty years in prison.

## II.  ISSUES

On appeal, Simon raises the following three issues: (1) whether the prosecutor's comments and arguments concerning Simon's failure to produce the pistol for testing in order to prove his innocence during the post-acquittal/pre-reindictment period violated his fifth amendment privilege against self-incrimination; (2) whether the prosecutor's comments during closing argument on the failure of Simon and his defense counsel to prove his innocence unconstitutionally shifted the burden of proof; and (3) whether the district court's refusal to charge the jury that a suspect is under no duty to produce exculpatory evidence was an abuse of discretion.

## III.  CONTENTIONS

The government contends that Simon's failure to produce the pistol was relevant admissible evidence which did not implicate the fifth amendment privilege against self-incrimination, and the use of that evidence did not impermissibly shift the burden of proof. Additionally, the government contends that the district court did not abuse its discretion in refusing to include Simon's proposed jury instruction.

## IV.  DISCUSSION

### A.  Admissibility of Evidence

In this case, the government, without objection, elicited evidence during its case-in-chief that in 1986, Simon had answered questions about his .45 caliber automatic pistol at a civil unemployment compensation hearing. The government argues that the evidence elicited in the civil unemployment hearing in 1986 regarding the pistol is relevant to show that Simon had guilty knowledge concerning the pistol, especially since it remained in his possession until it was stolen in 1988.

■■■ This court generally does not review evidentiary rulings except on the grounds asserted in a contemporaneous objection. *United States v. Nabors*, 707 F.2d 1294, 1298 (11th Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1271, 79 L.Ed.2d 677 (1984). *See also United States v. Arteaga–Limones*, 529 F.2d 1183, 1198–99 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct.

315, 50 L.Ed.2d 286 (1976). Simon never questioned the relevance of the civil unemployment compensation hearing evidence in any of his objections; consequently, we will not review its admissibility. In any event, this court has held that "questions of relevance fall within the broad discretion of the trial court." *Nabors*, 707 F.2d at 1298; *see also United States v. Linetsky*, 533 F.2d 192, 204 (5th Cir.1976). Thus, the evidence was admissible.*

### B. Prosecutorial Misconduct and Burden–Shifting

Simon's second contention is that the government's questioning of certain witnesses and comments made during closing argument on the failure of Simon, his family, and his defense counsel to produce the pistol in order to prove his innocence unconstitutionally shifted the burden of proof in violation of the due process clause. The Supreme Court declared in *In re Winship* that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Additionally, the Supreme Court has held that a defendant does not have to disprove anything nor prove innocence, and state-created presumptions to the contrary are violative of due process. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

This court, in recognizing the government's burden and obligation of proving guilt beyond a reasonable doubt, has recognized that a prosecutor's comment may be so prejudicial as to shift the burden of proof. *See Duncan v. Stynchcombe*, 704 F.2d 1213, 1216 (11th Cir.1983).

Such prosecutorial misconduct, if "so pronounced and persistent that it permeates the entire atmosphere of the trial," requires reversal. *United States v. Alanis*, 611 F.2d 123, 126 (5th Cir.), *cert. denied*, 445 U.S. 955, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980) (quoting *United States v. Blevins*, 555 F.2d 1236 (5th Cir.1977), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978)). Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury might draw from it and the impermissible practice of arguing suggestions beyond the evidence. *See Houston v. Estelle*, 569 F.2d 372, 380 (5th Cir. 1978). Additionally, prosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence. *See Winship*, 397 U.S. at 364, 90 S.Ct. at 1072. We reaffirm the former Fifth Circuit's position that "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law." *Houston*, 569 F.2d at 380.

The prosecutor stated in closing argument that,

> We asked Mr. Gross, 'did you even ask him or did he ever offer his .45?'
>
> We heard a lot. His family and friends don't have to do anything. We're not questioning that. But when you have lost your job because some bum comes in and says you killed somebody with your .45, doesn't common sense dictate that you are going to say, 'Hold it, hold it, guys. I have got a .45 at home. I never killed nobody with it. Let's go home. Let's get it. Let's walk it over to Metro and let's get it tested.' That is common sense. He didn't do that and Hialeah fired him. When he fought for

---

* Simon also argues that the evidence regarding the pistol was inadmissible because its admission violated his fifth amendment privilege against self incrimination. We recently spoke to such a claim in *United States v. Rivera*, 944 F.2d 1563 (11th Cir.1991). In *Rivera*, we held that "the government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warn-

ings." *Rivera* at 1568. Because Simon was not under arrest at the time in question, we reject his claim that the evidence regarding the pistol was inadmissible because of the fifth amendment self-incrimination provisions. Silence is admissible in the absence of *Miranda* warnings. [*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).] *Rivera* at 1568.

his job back, he never offered his .45. I just say that is common sense.

That is why I asked his sister and his wife and his mother-in-law and his private investigator, Bob Laws. I asked all of these people, 'Why didn't you do that?' Common sense.

In this case, in addition to the jury argument, the prosecutor questioned several witnesses about the failure of Simon and his family members to produce the pistol before his reindictment. Detective Turner was asked, "Between November, 1985 and all of '86 and all of 1987 and all of 1988 and the first couple of months in 1989, did Carlos Simon or anybody in his family ever offer you his .45 caliber colt government model automatic pistol for ballistics testing as Richard Caride did?" The prosecutor also asked Simon's wife the question, "Did you ever provide to Mr. Graves, your husband's lawyer, a .45 caliber pistol or any pistol for your husband's lawyer to test." Defense counsel objected to both of these questions, and the court sustained the objections but denied the motions for mistrial.

On several other occasions, the prosecutor commented upon the failure of Simon and his family members to produce the pistol. Defense counsel, however, either failed to object or the objections were overruled. Additionally, the prosecutor argued to the jury that Simon or his family members should have produced the pistol and would have produced the pistol during the post-acquittal/pre-reindictment period if, in fact, Simon was innocent. Such questioning and arguments were probably improper.

 Nevertheless, this court has held that "a prejudicial remark may be rendered harmless by curative instructions to the jury." *See United States v. Weinstein*, 762 F.2d 1522, 1542 (11th Cir.1985), *modified and reh'g denied*, 778 F.2d 673 (11th Cir.1985), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986). A curative instruction purges the taint of a prejudicial remark because "a jury is presumed to follow jury instructions." *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct.

745, 79 L.Ed.2d 203 (1984); *see Grizzell v. Wainwright*, 692 F.2d 722, 726–27 (11th Cir.1982), *cert. denied*, 461 U.S. 948, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983); *United States v. Kabbaby*, 672 F.2d 857, 863 (11th Cir.1982). This court has held that the prejudice from the comments of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof. *See Duncan v. Stynchcombe*, 704 F.2d 1213, 1216 (11th Cir.1983); *see also United States v. Casamayor*, 837 F.2d 1509 (11th Cir.1988), *cert. denied*, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989); *United States v. Johnson*, 713 F.2d 633, 651 (11th Cir.1983), *cert. denied*, 465 U.S. 1081, 104 S.Ct. 1447, 79 L.Ed.2d 766 (1984). Considerable weight is given to the trial judge's assessment of the prejudicial effect of the prosecutor's comments. *See Weinstein*, 762 F.2d at 1542. In this case, the district court sustained defense counsel's objections on two occasions to the line of questioning concerning the failure of Simon and his family members to produce the pistol. Additionally, in order to cure any error, the district court instructed the jury three times in its charge that the government had to prove its case beyond a reasonable doubt. The court's instructions gave the jury the proper law, and nothing indicates that the jurors did not abide by the court's instructions. Thus, although the prosecutor's remarks were probably improper, the district court rendered any error harmless by the repeated instructions to the jury that the defendant had no burden to produce any evidence.

**C. The Requested Jury Instruction**

 Simon's final contention that the district court committed reversible error when it refused to charge the jury that "a suspect is not under any legal duty to come forward with exculpatory evidence" is also without merit. This court held in *United States v. Rutkowski* that

> An appellate court should reverse a conviction because a trial court refused to give a requested jury instruction only if (1) the requested instruction was sub-

stantially correct; (2) the instruction is not addressed in the charge actually given; and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense.

*United States v. Rutkowski,* 814 F.2d 594, 597 (11th Cir.1987). In this case, the requested instruction was substantially correct, but the other two requirements are not met.

In the charge given to the jury the district court stated: (1) "Our law does not require the defendant to prove his innocence or produce any evidence at all," and "[t]he government has the burden, the obligation of proving him guilty beyond a reasonable doubt"; and (2) "[i]t is not necessary for the defendant to disprove anything, nor is the defendant required to prove his innocence"; and (3) "[i]t is further the theory of the defense that the defendant had no obligation to produce the gun in question since it is the Government's burden of proof in a criminal prosecution." The instructions taken as a whole clearly and adequately covered Simon's proposed instruction, and the district court's instruction on the burden of proof was correct. Since the requested jury instruction was covered in the charge to the jury, Simon's ability to present an effective defense was not impaired. Thus, the district court did not abuse its discretion in refusing to include Simon's repetitive instruction. *See United States v. Bailey,* 830 F.2d 156, 157 (11th Cir.1987).

## V. CONCLUSION

We hold that the evidence regarding Simon's failure to produce the pistol during the post-acquittal/pre-reindictment period, which included the 1986 civil unemployment compensation hearing was admissible evidence which did not implicate the fifth amendment privilege against self-incrimination. Nevertheless, the government's use of such evidence appears to have been an improper attempt to shift the burden of proof to the defendant. But even if the prosecutor's remarks were improper, any error was cured by the district court's re- peated instructions to the jury that Simon had no obligation to produce any evidence. Additionally, we hold that the district court did not abuse its discretion in refusing to give Simon's proposed jury instruction. Thus, we affirm the district court's rulings.

AFFIRMED.