[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 29, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-16706

_____

D. C. Docket No. 00-00101-CR-T-27MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD THOMAS,
a.k.a. Ed Thomas,
a.k.a. John Dawson,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 29, 2006)**

Before BIRCH, CARNES  and BRUNETTI[*], Circuit Judges.

PER CURIAM:

---

[*]Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Defendant-appellant, Edward Thomas, appeals his convictions for possession, by a convicted felon, of ammunition and a firearm that was unregistered. In light of the evidence presented, the government sufficiently proved that Thomas constructively possessed the firearm and ammunition in this case. Moreover, the district court did not abuse its discretion by denying Thomas's motion for mistrial based on the government's comment in its closing rebuttal argument. Accordingly, we AFFIRM Thomas's convictions.[1]

## I. BACKGROUND

A federal grand jury indicted Thomas for possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count One); possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Two); and possession of an unregistered firearm by a convicted felon, in violation of 26 U.S.C. § 5812 (Count Three). Prior to trial, Thomas stipulated that he was a convicted felon. In its opening statement at trial, the government explained that, it "need[ed] to prove beyond a reasonable doubt that [Thomas] was a convicted felon at the time he possessed the firearm [which was an] unregistered shotgun." R3 at 2-3. In his opening statement, defense counsel explained that:

_____

[1]This case was originally scheduled for oral argument but was removed from the oral argument calendar pursuant to 11th Cir. R. 34-3(f).

on February 6th of 2000, over four and a half years ago, Mr. Thomas and some friends had went over to Clearwater. And they had decided to just hang out, and they ended up at The Club Mercedes in Clearwater.

. . .

Now, Mr. Thomas was left at The Club Mercedes, which is not too far from the Days Inn hotel. Mr. Thomas's friends indicated that they would be back shortly to pick him up. Mr. Thomas indicated to his friends that if they did not return, then they could simply find him at the Days Inn motel.

As time began to pass, it became late and, in fact, as Mr. Thomas suspected, his friends never returned to pick him up. Mr. Thomas, in fact, went to the nearby Days Inn to possibly check in for the night, because he had no other way home.

While at the Days Inn motel, Mr. Thomas was approached by law enforcement who began to question his whereabouts.

Id. at 7.

Officer Kenneth Kanoski testified that, on the day of Thomas's arrest, he and several other units had responded to the report of a criminal incident involving two black males in a small red vehicle. He reported conducting a search of a vehicle matching the description which had been discovered near a motel. Inside the vehicle, he observed an odor indicating that a shotgun might recently have been fired. The officer also testified to finding a spent shotgun shell inside the vehicle which appeared to have resulted from a shot fired through the floorboard of the vehicle. Officer Kanoski described the recovery, from the area surrounding the vehicle, of a flower duffle bag that contained "a small paper bag with a receipt, two

3

boxes of shells for shotguns, [and] the weapon itself, the shotgun." R5 at 74-75.

Each box of ammunition was marked with a price of $5.99. Id. at 77-78. The

receipt, which was also admitted into evidence, was from "Big E's Guns" in

Tampa, Florida, listed the total amount of the purchase as $12.79, and was signed

"Ed Thomas." Exh. 18h. In a jacket near the other items, Officer Kanoski reported

recovering what appeared to be an employee identification card for "Harborside

Refrigerated Services" listing the name "Ed Thomas" and Thomas's social security

number. Id. at 88-89; see also Exh. 18f.

The red vehicle, a Dodge Shadow, and the other items were all found

together in Clearwater, Florida. Officer Kanoski admitted, however, that he had

not seen Thomas in or around the vehicle. Id. at 95. Officer Kanoski also

explained that another officer using a dog had been unable to locate any person in

the area associated with the Dodge Shadow. Id. at 101.

Officer Victor Brian Goodrich had also been dispatched to the scene of the

investigation to assist with the search for the two black males. He reported that,

once there, he joined another officer who was speaking with a man, identified as

Thomas, who was "on or near a pay phone at the Days Inn." Id. at 127. He

testified that the motel and pay phone were located between 75 and 100 yards from

the Dodge Shadow. Id. at 129. Officer Goodrich agreed that he had never seen

4

Thomas in or around the vehicle and that Thomas was cooperative with questioning. He testified that he did not check Thomas for gun powder and did not recall whether Thomas smelled like gun powder. Id. at 135, 138.

Officer Kimberly Millen, a forensic science specialist, testified that she had collected approximately 69 pieces of evidence at the scene of the investigation and had tried to recover fingerprints. Id. at 149. She explained that, for a variety of reasons, including texture, it is difficult to obtain fingerprints from firearms. She testified that, although she was unable to recover fingerprints from the receipt or ammunition, she was able to recover some from one of the boxes of ammunition. Carol Perkins Davis, who examined these fingerprints, testified that she found a "positive identification to the right thumbprint" of Thomas. Id. at 215. Michael Laroe, a special agent with the Department of Justice Bureau of Alcohol, Tobacco, Firearms and Explosives, testified that no firearms had been registered in Thomas's name, that the shotgun recovered should have been registered, and that, according to Thomas's driver's license, he resided in Tampa, Florida.

At the close of the government's case, Thomas asked the court to grant a judgment of acquittal on Counts Two and Three on the ground that no evidence had been presented showing that Thomas "possessed the shotgun." R6 at at 270. Thomas also asked for a judgment of acquittal as to Count One on the ground that

5

the receipt failed to show that Thomas either purchased the ammunition or took possession of it. The court denied Thomas's motion, and Thomas rested his case.

In its closing argument, the government reiterated that it "must prove this case beyond a reasonable doubt. And the burden will always be with the government." R4 at 2. In its rebuttal argument at closing, the government observed:

> Furthermore, there still has been no explanation, good explanation, logical explanation as to how this defendant was in Clearwater when it shows he lives in Tampa and, coincidentally, he's found a hundred yards in this exact spot, out of all Pinellas County, his identification is found next to a bag that has evidence with his fingerprint and his signature on it.

Id. at 35. Thomas objected to this statement by the government as an improper comment on Thomas's right to remain silent and as a shifting of the burden of proof. The court overruled the objection because:

> There [was] no genuine issue in this record as to whether this defendant was in Clearwater. He was identified and arrested in Clearwater. The argument, although appropriately objected to, does not rise to the level, in my view, of shifting the burden of proof to the defendant, nor commenting on the defendant's fifth amendment privilege of not testifying.

Id. at 38. The court also denied Thomas's request to perfect the record because it had already ruled on the issue.

After closing arguments, the court instructed the jury that:

6

It will be your duty to decide whether the government has proven beyond a reasonable doubt the specific facts necessary to find the defendant guilty of the offenses charged in the indictment.

. . . [Y]ou must follow all of my instructions as a whole, as I indicated earlier. You may not single out or disregard any of the court's instructions.

. . . [E]very defendant is presumed by the law to be innocent. The law does not require a defendant to prove innocence or to produce any evidence at all.

And if a defendant elects not to testify you cannot consider that in any way during your deliberations. The government has the burden of proving a defendant guilty beyond a reasonable doubt; and if it has failed to do so, you must find the defendant not guilty.

R6 at 362, 363. The jury found Thomas guilty on all three counts.

Thomas submitted a Motion for Judgment of Acquittal or Alternatively New Trial Due to Prosecutorial Misconduct, in which he restated his previous argument regarding the government's comment in its closing rebuttal remarks. The district court denied the motion, finding that "at worst, the prosecutor's comment was in response to [the] offer of proof [from Thomas's opening statement], which [had not been] forthcoming, rather than a comment on [Thomas's] failure to testify." R1-64 at 3. Moreover, the district court found that, even though the argument should not have been made, it was not the prosecutor's intention to refer to Thomas's silence and the comment was not of such a character that the jury would naturally and necessarily have taken it to have been a comment on Thomas's exercise of his Fifth Amendment right.

7

On appeal, Thomas argues that (1) the evidence presented at trial was insufficient to support his convictions because the government completely failed to prove that he, either actually or constructively, possessed either the unregistered shotgun or the ammunition and (2) the government's comment during its rebuttal argument in closing was improper such that the district court erred in not granting Thomas's motion for judgement of acquittal, or alternatively, a new trial.

## II. DISCUSSION

A. Sufficiency of the Evidence

We review the sufficiency of the evidence to support a jury's guilty verdict de novo, viewing that evidence in the light most favorable to the government, resolving "all reasonable inferences and credibility evaluations in favor of the jury's verdict." United States v. Clay, 376 F.3d 1296, 1300 (11th Cir. 2004), cert. denied, __ U.S. __, 125 S.Ct. 1427 (2005). We "must uphold the jury's verdict whenever a reasonable factfinder could conclude that the evidence establishes guilt beyond a reasonable doubt." Id. (quotation omitted).

To convict a defendant of possession of a firearm by a convicted felon, the government must prove, inter alia, that the defendant possessed a firearm or ammunition. 18 U.S.C. § 922(g)(1). This means the government must prove that the defendant had either actual or constructive possession of the firearm. See

8

United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir.) (per curiam), cert. denied, __ U.S. __, 125 S. Ct. 324 (2004). We explained that "[a] defendant has constructive possession if he exercises ownership, dominion, or control over the firearm," or "has the power and intention to exercise dominion or control." Id.

The evidence the government presented to convict Thomas sufficiently proved that Thomas constructively possessed both the shotgun and the ammunition. Officer Goodrich testified that Thomas was found outside the Days Inn in Clearwater, Florida, standing about 75 to 100 feet away from where Officer Kanoski had recovered a bag that contained a receipt, two boxes of shotgun shells, and a shotgun. The receipt from "Big E's Guns" listed the total amount of the purchase as $12.79, and was signed "Ed Thomas." The two boxes of ammunition were each marked with a price of $5.99, which, with the addition of tax, add up to a little over $12.00. Moreover, the fingerprint examiner testified that she had matched Thomas's right thumb print to a print taken by Officer Millen from one of the boxes of ammunition. In a jacket found near the other items, Officer Kanoski recovered employee identification that listed the name "Ed Thomas" and Thomas's social security number. In light of this evidence, the government sufficiently established that Thomas had ownership, dominion, or control over the shotgun and ammunition, or the power and intention to exercise such dominion or control.

B. Prosecutorial Comment

Thomas next argues that the prosecutor's statement in closing was an impermissible comment on his Fifth Amendment right to remain silent, was burden shifting, and, as such, constituted prosecutorial misconduct.  We review a district court's denial of a motion for a mistrial for abuse of discretion.  United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003).  "Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendant's substantial rights."  United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998) (internal quotation omitted).  To be substantially prejudicial, the improper comments must have "so infected the trial with unfairness as to make the resulting conviction or sentence a denial of due process."  Parker v. Head, 244 F.3d 831, 838 (11th Cir. 2001) (alteration and citation omitted).

"When a curative instruction has been given to address some improper and prejudicial evidence, we will reverse only if the evidence 'is so highly prejudicial as to be incurable by the trial court's admonition.'"  United States v. Harriston, 329 F.3d 779, 787 n.4 (11th Cir. 2003) (per curiam) (citations omitted).  Further, where the alleged errors represent only an insignificant portion of the trial, and properly admitted evidence sufficiently establishes a defendant's guilt, the defendant's

10

substantial rights are not affected. See, e.g., United States v. Adams, 74 F.3d 1093, 1100 (11th Cir. 1996).

As to the specifics of Thomas' arguments, "[i]t is a basic constitutional precept that reversible error will exist in a criminal case if the prosecution comments on the fact that the defendant does not testify." United States v. LeQuire, 943 F.2d 1554, 1565 (11th Cir. 1991). A comment is not an impermissible reference, however, unless (1) it was "intended to comment on the defendant's silence or [(2)] was of such a character that a jury would naturally and necessarily construe it as a comment on the defendant's silence." Id. Additionally, "in recognizing the government's burden and obligation of proving guilt beyond a reasonable doubt, [we have] recognized that a prosecutor's comment may be so prejudicial as to shift the burden of proof." United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992). "Nevertheless, [we have] held that 'a prejudicial remark may be rendered harmless by curative instructions to the jury.'" Id. at 1087 (citation omitted).

In this case, the district court did not abuse its discretion by denying Thomas's motion for mistrial after the government's comment during closing. First, the record supports the court's finding that the government's comment was not improper, but rather served as a reply to the explanation by Thomas's counsel

11

in his opening statement for Thomas's presence in Clearwater on the night of the offense and was thus not intended to emphasize Thomas's silence. Second, the reference was not of such a character that would lead the jury "naturally and necessarily" to understand it to be a comment on Thomas's silence. See LeQuire, 943 F.2d at 1565. Finally, even if the government's comment had been improper and could be viewed as an attempt to shift the burden of proof, the district court's instructions to the jury sufficiently clarified that the government had the burden and that the jury could not consider Thomas's silence in deciding if the government proved its case.

### III. CONCLUSION

Thomas appeals his convictions for being a convicted felon in possession of ammunition and an unregistered shotgun on the grounds that the government failed (1) to prove that he, either actually or constructively, possessed the shotgun and ammunition and (2) committed prosecutorial misconduct in the course of its closing arguments. We find that the government presented sufficient evidence for a jury to have found possession beyond a reasonable doubt and that, given the government's and the judge's statements and instructions regarding Thomas's silence and the burden of proof, the district court did not abuse its discretion in denying the motion for a mistrial. Accordingly, we **AFFIRM**.