[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 05-10544
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 30, 2006
THOMAS K. KAHN
CLERK

D.C. Docket  No. 03-20719-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FELIX UGARTE,
DANIEL BATLLE,

Defendants-Appellants.

----------------------------------------------------------------

Appeals from the United States District Court
for the Southern District of Florida

----------------------------------------------------------------

**(May 30, 2006)**

Before EDMONDSON, Chief Judge, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Felix Ugarte and Daniel Batlle appeal their convictions and 27 and 33-

month sentences, respectively, for conspiracy to possess and possession of stolen

goods--cellular phones taken from a tractor-trailer--in violation of 18 U.S.C. §§ 371 and 659. No reversible error has been shown; we affirm.

Batlle argues that the government presented insufficient evidence to show (1) that he intended to deal in stolen goods and (2) that he knew that the cellular phones were stolen. We review challenges to sufficiency of the evidence de novo. United States v. Klopf, 423 F.3d 1228, 1236 (11th Cir. 2005). We view the evidence in the light most favorable to the government and draw all reasonable inferences and credibility choices in favor of the jury's verdict. Id. (citation and quotation marks omitted). Knowledge that goods are stolen is an "essential element" of a § 659 conviction. United States v. Forrest, 620 F.2d 446, 450 (5th Cir. 1980).

Batlle contends that the evidence showed only that, based on the phones' low price and on Ugarte's assertions, he thought the phones were defective, not stolen. We disagree. The evidence demonstrated that, in October 1998, Batlle acted as a middleman and bought the phones for $8 each. Two of Batlle's co-conspirators testified that they knew the phones were stolen and that they bought the phones from Batlle for a much lower price than the wholesale price. Another co-conspirator said that, after police followed him while he was delivering the

phones, Batlle assured him that the phones were "cold": that law enforcement was not looking for the phones because the theft was not widely known.

Undercover investigator Hugo Gomez testified that Batlle informed Gomez when they first met in 1997 that he had been involved in other stolen goods transactions. After investigation, Gomez determined that the thefts Batlle described actually had occurred. Gomez testified that he and Batlle then arranged for the sale of stolen jeans, a deal that fell through when Batlle discovered that Gomez was an agent. And private citizen Juan Gispert, who assisted the FBI in undercover work, testified that Batlle in 2000 had offered to sell him a large amount of Levi's Dockers pants, later seized by the FBI. The foregoing evidence is enough to support a jury determination that Batlle knew the phones were stolen.

Next, Batlle argues that, under Fed.R.Evid. 404(b), the district court erred in admitting (1) Gomez's testimony about Batlle's earlier involvement with stolen goods, and (2) Gispert's testimony about the Dockers pants stolen in 2000.

To admit evidence of a defendant's earlier "bad acts" under Rule 404(b), we determine (1) whether the evidence is relevant to an issue other than the defendant's character, (2) whether sufficient proof exists so that a jury could determine that the defendant committed the extrinsic act, and (3) whether the probative value of the evidence is not substantially outweighed by its undue

3

prejudice, and whether the evidence meets the other requirements of Fed.R.Evid. 403. See United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003).

The district court abused no discretion in admitting Gomez's testimony. See United States v. Thomas, 242 F.3d 1028, 1031 (11th Cir. 2001) (reviewing a district court's evidentiary rulings for an abuse of discretion).[1] And the district court committed no error--plain or otherwise--in admitting Gispert's testimony, to which Batlle failed to object. See Jernigan, 341 F.3d at 1280 (reviewing unobjected-to evidentiary rulings for plain error).

Gomez's and Gispert's testimony about Batlle's involvement with stolen goods was relevant to the central issue of Batlle's knowledge of whether the phones were stolen. Batlle contends that Gomez's testimony was inadmissible because the government did not prove that the illegal acts in which Gomez claimed Batlle was involved occurred. But Gomez testified that his research revealed that thefts had occurred of the items Batlle claimed he had sold. The jury was entitled to believe Gomez's testimony, which was enough to provide a basis for determining that Batlle actually had handled the stolen merchandise. See

---

[1]The government urges us to review the admission of Gomez's challenged testimony for plain error because, the government contends, Batlle failed to raise a specific objection to the admission of this evidence. We need not decide whether plain error review applies: the district court properly admitted this evidence even under an abuse-of-discretion standard.

<u>United States v. Bowe</u>, 221 F.3d 1183, 1192 (11th Cir. 2000) (government can introduce evidence of defendant's otherwise admissible acts if the jury could find by a preponderance of the evidence that acts did in fact occur); <u>United States v. Sharif</u>, 893 F.2d 1212, 1214 (11th Cir. 1990) (stating that "it is the jury's prerogative" to believe or to disbelieve a witness' testimony). The jury could rely, likewise, on Gispert's testimony. And, although prejudicial, Gomez's and Gispert's testimony (1) was probative on the central issue of Batlle's knowledge and (2) showed transactions similar to the charged offense. Further, the district court instructed the jury that Gomez's testimony was admitted only to show Batlle's knowledge that he was dealing with stolen goods. The prejudicial effect of this evidence did not substantially outweigh its probative value.

Ugarte also claims Rule 404(b) error occurred when the district court admitted evidence of his prior conviction for possession of VCRs stolen in late 1999. This evidence was relevant to Ugarte's knowledge whether the phones were stolen and his intent to deal in stolen goods. Ugarte's prior offense involved a conviction, to which he admitted during his testimony. <u>See</u> <u>Jernigan</u>, 341 F.3d at 1282 (where extrinsic evidence involves a conviction, second element of Rule 404(b) inquiry is met). And the probative value of Ugarte's conviction is not substantially outweighed by its prejudicial effect. The circumstances surrounding

5

the prior offense and charged offense are similar, the district court gave the jury a limiting instruction, and the prior act took place only about one year before the charged offense conduct. See Jernigan, 341 F.3d at 1282 (prior convictions occurring two to three years before charged offense not too temporally remote for consideration). The district court abused no discretion in admitting evidence of Ugarte's prior conviction.

Ugarte also argues that the district court abused its discretion in denying his motions for mistrial and for severance.[2] Ugarte contends that the cross-examination by Batlle's lawyer of a government witness about Batlle's admissions in his post-arrest statement (1) violated the court's order that any references in the statement to Ugarte be redacted from the statement, and (2) violated Bruton v. United States, 88 S.Ct. 1620 (1968), because Batlle did not testify.[3]

The agent's cross-examination testimony prejudiced Ugarte: it implicated Ugarte as part of the stolen phone conspiracy. But other evidence at trial showed (1) that Ugarte had participated in wiretapped phone conversations about the cell

---

[2] We review a district court's denial of these motions for an abuse of discretion. United States v. Ramirez, 426 F.3d 1344, 1352-53 (11th Cir. 2005).

[3] The government's direct examination of the agent produced no statements directly referring to Ugarte. But during cross-examination, Batlle's lawyer asked questions and received answers indicating that Batlle in his post-arrest statement said that both Ugarte and Batlle had received a commission from the sale of the phones and that Batlle had learned of the phones from Ugarte.

phone transaction, (2) that officers observed Ugarte drive to a warehouse where he unloaded boxes into a truck, in which another co-conspirator admitted to transporting the boxes of stolen cell phones, (3) that a co-conspirator testified that Ugarte and Batlle explained that no one knew that the phones were stolen, and (4) that Ugarte admitted to a previous conviction for possession of stolen goods with conduct similar to that involved in this case. In the light of all the properly admitted testimony of Ugarte's involvement in the conspiracy, the prejudicial effect of the agent's testimony about Batlle's admission "is so insignificant . . . that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." United States v. Veltmann, 6 F.3d 1483, 1500 (11th Cir. 1993) (quotation omitted).[4] The district court did not abuse its discretion in denying Ugarte's motions for mistrial and for severance.

Ugarte next contends that the government improperly shifted the burden of proof to him, thus violating his Fifth Amendment right against self-incrimination. He points to his testimony that he arranged for the purchase of defective cell phones from a person named Jose Luis Lopez and that he received an invoice from Lopez. On cross-examination, the government asked him where the invoice was.

_____

[4]We note that Ugarte did not make a contemporaneous objection when the agent testified about Ugarte receiving a commission; Ugarte moved for a mistrial at the conclusion of the agent's testimony.

7

The government is not to suggest that a defendant is obligated to produce evidence of innocence. See United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992). But here, the government only referred to the invoice briefly: the government's question was not "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." Id. (citation omitted). And the district court instructed the jury, after closing arguments, that the government alone bore the burden of proving Ugarte's guilt. See id. at 1087 (court's curative instructions on burden of proof may render harmless government's prejudicial remark). We need not decide whether the government's question was improper: any error arising from this question was harmless.

Batlle argues that the district court erred by including the uncharged Rule 404(b) act evidence--specifically, the Dockers pants stolen in 2000, valued at $308,000--as relevant conduct in its sentencing loss calculation. Batlle did not object below to the court's relevant conduct determination: we review this issue for plain error. See United States v. Burge, 407 F.3d 1183, 1186 (11th Cir.), cert. denied, 126 S.Ct. 551 (2005). Under the applicable relevant conduct provision, U.S.S.G. § 1B1.3(a)(2) (1998), the charged offense and the Dockers theft are "relevant conduct": they are "part of the same course of conduct or common scheme or plan." The offenses involved (1) at least one common co-conspirator,

Ugarte, (2) goods stolen from tractor-trailers in Florida, and (3) Batlle acting as a middleman. See U.S.S.G. § 1B1.3(a)(2), comment. (n.9(A)) ("common scheme or plan" means offenses "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi"). The district court did not plainly err by including the Dockers theft as relevant conduct.

We also reject Batlle's and Ugarte's assertions that their sentences are unreasonable under United States v. Booker, 125 S.Ct. 738 (2005). Batlle contends that the district court relied too much on the extrinsic evidence of uncharged offenses in calculating his guideline sentencing range and that the court did not properly account for Batlle's history and characteristics. And Ugarte argues that, by denying his request for a minor role reduction and for a downward departure based on his medical condition, the district court did not properly consider the 18 U.S.C. § 3553(a) factors.[5]

In fashioning Batlle's sentence, the district court stated that it believed that the guideline range addressed the appropriate sentencing factors, it indicated that

---

[5]Ugarte does not argue the merits of the denial either of the minor role reduction or of the downward departure. Instead, his argument is about the district court's failure to take into account these allegations in its evaluation of the § 3553(a) factors.

it had considered the statements of the parties, and it acknowledged Batlle's medical condition. In sentencing Ugarte, the district court stated that it had considered the presentence investigation report and Ugarte's sentencing arguments; the court also indicated that a sentence within the applicable guideline range was reasonable and addressed the appropriate sentencing factors. For purposes of satisfying Booker, the district court's statements were enough to show that the court adequately considered the § 3553(a) factors. See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (acknowledgment by district court that it has considered defendant's arguments and factors in 18 U.S.C. § 3553(a) satisfies Booker). The court then imposed sentences for both defendants at the bottom of the applicable guideline ranges. And nothing evidences that the court's consideration of Batlle's relevant conduct clouded its application of the sentencing factors. See id. at 788 (expectation is that sentence within guidelines range would be reasonable; party challenging sentence bears burden of showing sentence is unreasonable in the light of the record and § 3553(a) factors). On this record, we cannot say that Defendants' sentences are unreasonable.

**AFFIRMED.**