[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 30, 2010
JOHN LEY
CLERK

_____

No. 10-10240
Non-Argument Calendar

_____

D.C. Docket No. 0:09-cr-60204-DMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JUAN ANTONIO MOYA-RODRIGUEZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 30, 2010)

Before BARKETT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Juan Antonio Moya-Rodriguez, through counsel, appeals his jury

convictions for bulk-cash smuggling, failure to file a currency report, and making materially false statements to a federal agency. He claims that the district court erred in failing to grant a motion for judgment of acquittal, admitting evidence linking him to drug smuggling, and allowing the prosecutor to comment on his silence during customs screening. We review these claims in turn and conclude each fails. Accordingly, we affirm.

## I.

A brief recitation of the facts is sufficient for the resolution of this appeal. In 2009, Moya-Rodriguez boarded a flight from Ft. Lauderdale, Florida to Panama City, Panama. At customs, he was denied entry into Panama due to an expired visa. He boarded a return flight to Ft. Lauderdale and, upon arrival, retrieved his luggage and proceeded to customs. Moya-Rodriguez declared on the U.S. Customs form, and verbally to customs officials, that he was not transporting more than the equivalent of $10,000 in currency. Due to anxious behavior during his initial screening, Moya-Rodriguez was directed toward a secondary screening area.

Another agent questioned Moya-Rodriguez and searched his luggage, discovering large quantities of U.S. currency concealed within several pairs of pants. At that time, Moya-Rodriguez muttered "my kids, I did it for my kids." He

2

was then transferred to a search room, given a thorough inspection by customs employees, and handcuffed in a seat. An officer from the sheriff's department arrived with a K-9 unit, which alerted to the presence of illegal narcotics on the currency found in Moya-Rodriguez's baggage. After counting the money located in the luggage and on his person, officials concluded that Moya-Rodriguez possessed more than $120,000. The case proceeded to trial and a jury convicted Moya-Rodriguez of bulk-cash smuggling, failure to file a currency report, and making false statements to the federal government.

## II.

Moya-Rodriguez first argues that the district court erred in not granting his motion for judgment of acquittal on sufficiency grounds. His sole contention is that the government failed to prove that he transported currency from a place outside the United States to a place within the United States, which is a necessary component of each of his convictions. This never occurred, he argues, as his person and luggage were never granted entry into Panama. Alternatively, he claims the government never introduced evidence proving that his luggage left the United States.

We review *de novo* the denial of a motion for judgment of acquittal on sufficiency grounds. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir.

3

2007). When adjudicating a challenge to the denial a Rule 29 motion, we "must view the evidence in the light most favorable to the government and decide whether a reasonable fact finder could have reached a conclusion of guilt beyond a reasonable doubt." *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991). When interpreting statutory language, we attribute the plain and ordinary meaning to the language used. *United States v. Frank*, 599 F.3d 1221, 1234 (11th Cir. 2010) (citations omitted).

The bulk-cash smuggling statute criminalizes attempted and completed transports and transfers of more than $10,000 from "a place outside the United States to a place within the United States . . . ." 31 U.S.C. § 5332(a)(1). Likewise, the currency reporting statute uses the phrase "to a place in the United States from or through a place outside the United States . . . ." 31 U.S.C. § 5316(a)(1)(B). Finally, Moya-Rodriguez's conviction for making a false statement is based on his representation, through the customs form and orally, that he was not bringing more than $10,000 into the United States.

The Panama City airport, undoubtedly, is a place outside of the United States while the Ft. Lauderdale airport is within the United States. Moya-Rodriguez's claim that he intended to leave the money in Panama is not relevant to his convictions on these charges. His failure to proceed past the customs

4

checkpoint in Panama also provides him no relief. The statutes simply require that the currency depart from outside of the United States and end up within its borders. That fundamental point can inferred be from the evidence presented, and no theory of statutory interpretation would lead to the conclusion that Panama City's airport falls within the United States.

Therefore, viewing the evidence in the light most favorable to the government, we conclude that the jury had a sufficient basis for convicting Moya-Rodriguez on each of the three counts.

III.

Moya-Rodriguez next contends that the district court erred in admitting the testimony of a K-9's handler because it lacked relevance and probative value.[1] He further objects to the testimony of a customs official as unfairly prejudicial.

We review district court evidentiary rulings for abuse of discretion. *United States v. Eckhardt*, 466 F.3d 938, 946 (11th Cir. 2006) (citation omitted). "The trial court is vested with broad discretion in ruling upon the relevancy and admissibility of evidence." *United States v. Anderson*, 872 F.2d 1508, 1515 (11th

---

[1]Moya-Rodriguezalso implies that the K-9 handler's testimony was improper expert witness testimony and that the prosecution introduced evidence of prior bad acts without the required notice. A review of the record reveals that Moya-Rodriguez failed to raise these issues before the trial court. Moya-Rodriguez's claim that proper Rule 404(b) notice was never given is also misguided as none of the complained of evidence relates to a prior act committed and thus is not covered by the rule.

5

Cir. 1989). Furthermore, the challenging party must show the admitted evidence had a substantial prejudicial effect. *Judd v. Rodman*, 105 F.3d 1339, 1341 (11th Cir. 1997).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403.

Each of Moya-Rodriguez's challenges to the testimony of the K-9 handler fails. The district court could have deemed the testimony relevant for any number of reasons. For example, it counters the notion that Moya-Rodriguez might have been transporting the money for legal purposes and also provides motive for his attempts to conceal it. We have previously discussed the relevancy of K-9 alert testimony in a prosecution for concealing money transfers from the Internal Revenue Service. *United States v. Hernando Ospina*, 798 F.2d 1570, 1583 (11th Cir. 1986) (per curiam).

Moya-Rodriguez further challenges that the testimony regarding the K-9 alert lacked probative value because a large portion of the currency currently in circulation has been in contact with narcotics and thus the K-9 alert provided no

meaningful evidence. That argument lacks merit because this Court has declined to adopt the theory that K-9 alerts lack relevance and probative value based on such a claim. *United States v. $242,484*, 389 F.3d 1149, 1165-66 (11th Cir. 2004) (en banc).

Moya-Rodriguez passively mentions that the testimony elicited from a customs official, that she (1) initially believed the jeans hid drugs rather than money and (2) wondered how someone working as a driver and in maintenance could come to possess so much money, is also unfairly prejudicial. This testimony, however, provided an explanation for the officer's actions when questioning and searching Moya-Rodriguez. It provided context for the search and tended to disprove Moya-Rodriguez's suggestion that the customs officers acted improperly.

Therefore, we conclude that the district court did not abuse its discretion in admitting the evidence elicited from the dog handler and the customs officer.

IV.

Finally, Moya-Rodriguez argues that prosecutorial misconduct and improper burden shifting occurred when the government made remarks during closing argument about Moya-Rodriguez's reactions during the customs screenings. The prosecutor described the events at the second screening area by

stating that

> "[t]he truth of the matter is, when Officer Fernandez was describing how he [Moya-Rodriguez] looked, he was embarrassed, he was ashamed, he looked embarrassed and he said, my kids, I did it for my kids. Never once does he say oh, my goodness, I didn't know I had to report that. I misunderstood the form. Give me another form, I'm happy to fill it out now, I'm sorry, I had no idea, not once does he say that. Instead he says, my kids, I did it for my kids. Never once does he say, I didn't mean to bring that money into the United States."

Moya-Rodriguez believes these statements improperly commented on his post-custody silence and constitute reversible error.

We review allegations of prosecutorial misconduct *de novo*, as they involve mixed questions of law and fact. *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997).[2] Such allegations are subjected to a two-part test requiring the Court to (1) determine whether the challenged statements were improper; and (2) if so, whether they prejudicially affected a substantial right of the defendant. *United States v. Obregon*, 893 F.2d 1307, 1310 (11th Cir. 1990) (citations omitted). Any such misstatements are evaluated in the context of the entire record. *Id*. Reversal is appropriate when it is reasonably probable that the result of the trial would have been different but for the remarks made by the prosecution.

[2]We note that the government characterized Moya-Rodriguez's challenge as an allegation that the closing argument improperly commented on the defendant's failure to testify at trial. Moya-Rodriguez, however, focuses on the prosecutor's comments regarding his silence at the airport rather than his failure to testify at trial. Thus, we conclude the issue is best framed as a prosecutorial misconduct claim.

*United States v. Wilson*, 149 F.3d 1298, 1302 (11th Cir. 1998).

Remarks by a prosecutor can also constitute improper burden shifting if they cloud which party bears the burden of proof. *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). Prosecutors may not argue suggestions beyond the evidence or imply that the defendant must produce evidence or prove his innocence. *Id*. To require reversal, the misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (quoting *United States v. Alanis*, 611 F.2d 123, 126 (5th Cir. 1980) (citation omitted)).

A lenghty discussion of whether Moya-Rodriguez was in custody and thus entitled to *Miranda* rights in the secondary customs screening area is not necessary. Even if the prosecutor's statements were improper, Moya-Rodriguez fails to claim that the comments resulted in a different outcome at trial. The government offered evidence that Moya-Rodriguez transported more than $120,000 into the United States from Panama, that the currency was concealed inside jeans in his baggage, and that he did not accurately respond on the required customs forms. That evidence, which is not related to the allegedly improper statements, established a sufficient basis for a guilty verdict.

Likewise, Moya-Rodriguez does not appreciate the burden he bears for proving a claim of improper burden shifting. The remarks on Moya-Rodriguez's

conduct and demeanor did not imply that he was required to prove his innocence. A review of the record does not reveal that such references affected the general atmosphere of the proceedings in a manner that would warrant reversal of Moya-Rodriguez's convictions.

Based on a review of the record and the parties' briefs, we affirm Moya-Rodriguez's convictions.

**AFFIRMED.**

10