[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12414
Non-Argument Calendar

_____

D.C. Docket No. 1:11-cr-20660-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AQUCAVISE T. STANLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 7, 2012)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, Defendant Aqucavise Stanley appeals his conviction for

possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On appeal, Stanley raises one issue: whether the prosecutor's closing argument violated his rights under the Fifth Amendment. After review, we conclude Stanley has shown no reversible error and affirm.

## I.  BACKGROUND

### A.    Stanley's Arrest

On May 20, 2011, Officer George Eugene, a police officer with the Miami-Dade Police Department, was on routine patrol in Miami, Florida, in his marked police car. Officer Eugene observed Stanley holding the waistband of his shorts with his right hand, as Stanley walked in a grassy area alongside the road. As Officer Eugene's police car approached, Stanley pulled a cell phone out of his left pocket, put it toward his ear, and began talking. Stanley continued to hold onto his waistband and, while driving by Stanley, Officer Eugene noticed a bulge in Stanley's pants.

In his police car, Officer Eugene pulled alongside Stanley and asked to speak to him. Stanley immediately began running, continuing to hold his waistband. Officer Eugene followed Stanley in his police car until Officer Eugene was forced to leave the car and pursue Stanley on foot. Officer Eugene saw Stanley run behind a house and jump over a chain-link fence into another

2

backyard.  Officer Eugene followed.  Stanley then ran toward a wooden fence on the far side of the backyard and stood on an air-conditioning unit in order to climb the wooden fence.

As Stanley climbed down on the other side of the wooden fence, Officer Eugene, who was now standing on the air conditioning unit, saw a gun and cell phone fall from Stanley's person.  After Stanley fell to the ground on the other side of the fence, Stanley continued running and tossed a gun magazine back toward the fence.  Stanley then jumped over another fence and was attacked by two dogs.  Officer Eugene helped Stanley back over that fence and arrested him.

A federal grand jury returned an indictment charging Stanley with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  He pleaded not guilty and proceeded to trial.

**B.    Stanley's Trial**

Stanley's one issue on appeal involves whether the prosecutor's closing argument commented on Stanley's failure to testify and shifted the burden of proof.  Therefore, we review in detail what happened at trial.

After the jury was sworn, the district court explained to the jurors that every defendant is presumed to be innocent and that they could not draw an inference of guilt from the fact that Stanley was indicted.  The district court also instructed that

3

the government always carries the burden of proving guilt beyond a reasonable doubt, that a defendant may choose not to testify, and that the jurors were not permitted to draw an inference of guilt from a defendant's decision not to testify.

During opening statements, Stanley's defense counsel stated that "[t]here is nothing that links this gun to Mr. Stanley other than the fact that [Officer Eugene] is going to say, 'I saw it fall from [Stanley's] waistband.'" Defense counsel then stated: "I will tell you at the end of the case as to why that didn't take place."

As its main witness, the government called Officer Eugene, who testified as to his pursuit of Stanley. On cross-examination, defense counsel questioned whether Officer Eugene was able actually to see the gun fall from Stanley's waistband, since (1) Stanley had a head start on Officer Eugene, (2) Stanley jumped over the fence before Officer Eugene did, and (3) Officer Eugene was unable to see the other side of the fence. Officer Eugene maintained that he personally saw the gun and cell phone fall from Stanley's person.

Stanley's defense case consisted solely of the testimony of a case agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, who testified that upon Stanley's arrest, the agent took a DNA swab from Stanley's cheek. The agent further testified that no analysis on the swab was ever performed.

Before the government and the defense presented their closing arguments,

4

the district court instructed the jurors that they were not to consider arguments made by counsel as evidence and that they were required to render a verdict based only on the evidence that was in the record.  During closing arguments, the prosecutor told the jury, "[n]ow, [defense counsel] also made a promise to you in opening statement. . . . He promised to you that he would show you why—he would tell you why what Officer Eugene saw was a lie."  Defense counsel objected, stating that he did not "believe [he] ever said that Officer Eugene was lying" and that he did not "believe it is fair comment or appropriate comment by the prosecutor to make these comments at this time."  The district court overruled the objection, stating that it thought that the prosecutor's statement was a "fair comment on the testimony and evidence that was presented."

The prosecutor then argued to the jurors:

> Now, the judge just instructed you, and will instruct you again, that what we say is not evidence. It is not evidence in this case. What [defense counsel] says is not evidence. What he is about to come up here and tell you will not be evidence, and he did not—you know, he did not show you one piece of evidence as to why Officer Eugene was lying.
>
> Now, make no mistake. The burden in this case is squarely on the United States government. We have the burden of proof. But when [defense counsel] makes a promise to you in opening statement you should make him live up to that promise and he did not.
> . . . .
> [T]he judge is going to instruct you again on proof beyond a

5

reasonable doubt, and that's our burden. We have to prove this case beyond a reasonable doubt, and we embrace that burden and I'm going to tell you why. Because it is a reasonable doubt. It is not any doubt, it is not a possible doubt, it is not a forced doubt, or a speculative doubt. It is a reasonable doubt. And there has been no reasonable doubt given to you in this case. None.

Defense counsel raised no objections during or after this part of the prosecutor's closing argument.

Following the closing arguments, the district court again instructed the jurors to make their decision based on only the testimony and other evidence presented during the trial, and that the government had the burden of proving Stanley guilty beyond a reasonable doubt.

The jury found Stanley guilty of one count of possession of a firearm and ammunition by a convicted felon. Stanley then filed this appeal.

### III. DISCUSSION

On appeal, Stanley argues that the prosecutor's closing argument violated his rights under the Fifth Amendment because his statements were intended to be a comment on Stanley's failure to testify and improperly shifted the burden of proof to the defense.[1]

---

[1]We ordinarily review allegations of prosecutorial misconduct during closing argument de novo. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006). Because Stanley did not raise specific objections at trial related to impermissible burden-shifting or commenting on a defendant's right not to testify, we would normally review only for plain error "that is so obvious

A prosecutor impermissibly comments on a defendant's right to remain silent where: "(1) the statement was <u>manifestly intended</u> to be a comment on the defendant's failure to testify; or (2) the statement 'was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " <u>United States v. Knowles</u>, 66 F.3d 1146, 1162-63 (11th Cir. 1995) (citation omitted).  A comment on the failure of defense counsel, as opposed to the defendant, to counter or explain evidence does not violate the defendant's Fifth Amendment privilege against self-incrimination.  <u>United States v. Hernandez</u>, 145 F.3d 1433, 1439 (11th Cir. 1998).  A prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel.  <u>United States v. Sarmiento</u>, 744 F.2d 755, 765 (11th Cir. 1984).

For a prosecutor's remarks to constitute prosecutorial misconduct, they must (1) be improper and (2) prejudicially affect the defendant's substantial rights.  <u>United States v. Eckhardt</u>, 466 F.3d 938, 947 (11th Cir. 2006).  "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different."  <u>Id.</u> (citation omitted).

_____

that failure to correct it would jeopardize the fairness and integrity of the trial." <u>United States v. Bailey</u>, 123 F.3d 1381, 1400 (11th Cir. 1997).  However, we need not determine whether our review is <u>de novo</u> or plain error because Stanley has not shown reversible error in any event.

7

In recognizing the government's burden of proving guilt beyond a reasonable doubt, we have recognized that a prosecutor's comment may be so prejudicial as to shift the burden of proof.  United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992).  However, the prejudice from a prosecutor's comments that may result in burden-shifting can be cured by a court's instructions regarding the burden of proof.  Id. at 1087; see also Hernandez, 145 F.3d at 1439 (holding that any potential prejudice regarding burden-shifting is diminished by the prosecutor's statement that the burden of proof is the government's and the court's explicit instructions regarding the burden of proof in the jury charge).

Here, the prosecutor's statements did not violate Stanley's Fifth Amendment rights.  The statements were permissible argument as a response to defense counsel's opening statement that clearly placed Officer Eugene's credibility at issue.  See Sarmiento, 744 F.2d at 765.  Moreover, the prosecutor's statements were not manifestly intended to be a comment on Stanley's failure to testify, nor were the statements of such a character that the jurors would naturally and necessarily take them to be a comment on Stanley's failure to testify.  See Knowles, 66 F.3d at 1162-63.  Rather, the statements, which named defense counsel rather than Stanley personally, were directed at defense counsel's failure to identify any evidence that contradicted Officer Eugene's testimony.  See

8

Hernandez, 145 F.3d at 1439.

Finally, because both the prosecutor and the district court cautioned the jurors that (1) the statements of the lawyers were not evidence, (2) they were not to consider the fact that Stanley failed to testify, (3) Stanley was presumed innocent, and (4) the government bore the burden of proof, any potential prejudice or burden-shifting caused by the statements was diminished or cured such that the statements did not affect Stanley's substantial rights. See Eckhardt, 466 F.3d at 947; Simon, 964 F.2d at 1087. Accordingly, we affirm Stanley's conviction.

**AFFIRMED.**