[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11306
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 7, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-20420-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY A. SOTO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 7, 2010)

Before TJOFLAT, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Jimmy A. Soto appeals his convictions and total sentence of 140 months'

imprisonment imposed after a jury found him guilty of one count of conspiracy to commit health care fraud and seven counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 1349 (Counts 1-8), and one count of conspiracy to commit money laundering and four counts of money laundering, in violation of 18 U.S.C. § 1915(a)(1)(B)(i) and (h) (Counts 9-12 and 14). In general, the Government initiated charges against Soto, Eliades Diaz, Leonardo Lozada, and Jose Claro for their involvement in operating Med-Pro Miami ("Med-Pro"), a company established to provide health care products and services but defrauded Medicare by accepting payments without providing such products and services. Soto challenges his convictions on three grounds, and his sentences as unreasonable.

I.

A.

First, Soto argues that the district court erred by denying his motions for judgment of acquittal. He contends that the Government failed to present sufficient evidence to support his convictions because it did not introduce evidence that he came to an agreement with at least one other individual to commit an illegal act. In this respect, he asserts that his mere presence and participation in various meetings and telephone conversations was insufficient, even if he knew of the criminal conduct. Instead, he claims that the evidence only established an

2

agreement between Diaz and the individual who allegedly submitted the fraudulent claims to Medicare.

We review the denial of a motion for a judgment of acquittal *de novo*. *United States v. Evans*, 473 F.3d 1115, 1118 (11th Cir. 2006). "When the motion raises a challenge to the sufficiency of the evidence, we review the sufficiency of the evidence de novo, drawing all reasonable inferences in the government's favor." *Id.* (quotation omitted). "To affirm the denial, we need determine only that a reasonable factfinder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *Id.* (quotation and ellipsis omitted). Finally, in the context of a motion for acquittal, all "credibility choices are made in favor of the jury verdict," and the government's "evidence need not exclude every reasonable hypothesis of innocence." *United States v. Ramsdale*, 61 F.3d 825, 828-29 (11th Cir. 1995).

In general, "[a] conspiracy is an agreement between two or more persons to accomplish an unlawful plan." *United States v. Chandler*, 388 F.3d 796, 805 (11th Cir. 2004). "What distinguishes the offense of conspiracy from a substantive offense, is that agreement is the essential evil at which the crime of conspiracy is directed." *Id.* at 806 (quotation omitted). "Thus the government must prove the existence of an *agreement* to achieve an unlawful objective and the defendant's

3

*knowing* participation in that agreement." *Id.*

"Because the essential nature of conspiracy is secrecy, a conspiracy conviction may be proved by circumstantial evidence." *Id.* Nevertheless, "[s]ince no one can be said to have agreed to a conspiracy that they do not know exists, proof of *knowledge* of the overall scheme is critical to a finding of conspiratorial intent." "The government, therefore, must prove beyond a reasonable doubt that the conspiracy existed, that the defendant *knew* about it and that he voluntarily agreed to join it." *Id.* But, "[a] defendant may be found guilty of conspiracy if the evidence demonstrates that he knew the 'essential objective' of the conspiracy, even if he did not know all its details or played only a minor role in the overall scheme." *United States v. Guerra*, 293 F.3d 1279, 1285 (11th Cir. 2002). Finally, where a defendant is a member of a conspiracy, the defendant is criminally liable for his co-conspirator's reasonably foreseeable crimes committed during the course of and in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 645-48, 66 S.Ct. 1180, 1183-84, 90 L.Ed. 1489 (1946); *United States v. Broadwell*, 870 F.2d 594, 602 n.18 (11th Cir. 1989).

**A.    Counts 1-8**

Section 1347 of Title 18 of the U.S. Code provides:

(a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice- -

4

> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned . . . .

18 U.S.C. § 1347. Furthermore, 18 U.S.C. § 1349 punishes any person who attempts or conspires to commit a violation of § 1347, and it subjects any violations "to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

Drawing all inferences in the Government's favor and making all credibility determinations in favor of the jury's verdict, a reasonable factfinder could conclude that Soto both conspired to commit health care fraud and committed health care fraud as a result of his participation in the conspiracy. The testimony of Lozado, Diaz, and Claro, who appeared as prosecution witness, was particularly damaging. Claro was the nominal owner and president of Med-Pro; the real owners of the company were Diaz, and Soto (and an unindicted co-conspirator). Med-Pro never provided any patients with medical equipment and no physician ever ordered any; yet, between the Fall of 2005 and the Spring of 2006, it submitted $5.4 million of false claims to Medicare. In response, Medicare paid Med-Pro approximately

5

$1.35 million. The evidence that Soto was aware of the fraudulent claims and a co-conspirator with the others was overwhelming. We therefore hold that the district court did not err in denying Soto's motions for judgment of acquittal on Counts 1-8.

**B. Counts 9-12, 14**

In order to convict a defendant for money laundering in violation of § 1956(a)(1)(B)(i), the government must show that:

> (1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of a statutorily specified unlawful activity; (3) the defendant knew the proceeds were from some form of illegal activity; and (4) the defendant knew a purpose of the transaction was to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

*United States v. Miles*, 290 F.3d 1341, 1354-55 (11th Cir. 2002). Under 18 U.S.C. § 1956(h), "[a]ny person who conspires to commit any offense defined in [section 1956] . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." Where a conspiracy is charged, the government also "has the burden of showing that . . . [the defendant] conspired to launder or engage in a monetary transaction involving the 'proceeds of specified unlawful activity . . . .'" *United States v. Khanani*, 502 F.3d 1281, 1295 (11th Cir. 2007).

Drawing all inferences in the Government's favor and making all credibility

6

determinations in favor of the jury's verdict, a reasonable factfinder could conclude that Soto both conspired to commit money laundering and committed money laundering as charged in the indictment. At trial, the Government presented evidence that, after Soto and Diaz agreed that they needed to conceal their involvement in Med-Pro and the fraud, they recruited several individuals to cash Med-Pro checks. The checks allowed the conspirators to obtain the money paid by Medicare to Med-Pro and they were written by Soto and Diaz to appear as though they were for legitimate business purposes. We find no basis for holding that the district court erred in denying Soto's motions for judgment of acquittal on Counts 9-12 and 14.

## B.

Soto challenges several evidentiary rulings as contrary to the Federal Rules of Evidence. He contends, among other things, that the district court admitted hearsay evidence and rejected his requests for curative instructions. In particular, the court permitted the prosecutor to elicit irrelevant, prejudicial testimony. The courts erroneous rulings, he says, considered both individually and cumulatively, denied him a fair trial.

"We review a district court's evidentiary rulings for abuse of discretion." *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). In addition, "[w]e

review preserved evidentiary objections for harmless error." *Id.* Non-

constitutional errors are considered harmless:

> if, viewing the proceedings in their entirety, a court determines that the error did not affect the verdict, or had but very slight effect. If one can say with fair assurance that the judgment was not substantially swayed by the error, judgment is due to be affirmed even though there was error.

*United States v. Jones*, 601 F.3d 1247, 1264 (11th Cir. 2010) (quotation omitted).

Where a defendant alleges cumulative error, "[t]he harmlessness of cumulative

error is determined by conducting the same inquiry as for individual error—courts

look to see whether the defendant's substantial rights were affected." *Baker*, 432

F.3d at 1223 (quotation omitted).

In general, Rule 602 provides that, subject to the rules governing opinion

testimony and expert witnesses, "[a] witness may not testify to a matter unless

evidence is introduced sufficient to support a finding that the witness has personal

knowledge of the matter." Moreover, Rule 701 provides that, for opinion

witnesses not testifying as experts,

> the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Finally, under Rule 704(a), testimony in the form of an opinion or inference, that is

otherwise admissible, is not objectionable merely "because it embraces an ultimate issue to be decided by the trier of fact."

In terms of hearsay, Rule 802 states that "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A statement is not hearsay if the statement is offered against a party, and the statement is the party's own statement or the statement is made by the party's co-conspirator during the course and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(A) and (E).

"[T]he cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial might be necessary." *United States v. Preciado-Cordobas*, 981 F.2d 1206, 1215 n.8 (11th Cir.1993). "In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997). Nevertheless, when a defendant cannot demonstrate any individual errors, "no cumulative errors can exist." *United States v. Waldon*, 363 F.3d 1103, 1110 (11th

9

Cir. 2004).

We have examined each of the evidentiary rulings Soto challenges in his brief and conclude that none of the rulings constituted an abuse of discretion. We therefore find no cause for setting aside his convictions and granting him a new trial.

C.

Soto argues that the prosecutor improperly shifted the burden of proof to him during its closing argument to the jury; hence, the court should have declared a mistrial.

We review a district court's decision not to grant a mistrial for abuse of discretion. *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). A defendant must show substantial prejudice in order to be granted a mistrial. *United States v. Chastain*, 198 F.3d 1338, 1352 (11th Cir. 1999). Substantial prejudice "occurs when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different." *Newsome*, 475 F.3d at 1227.

In general, it is prosecutorial misconduct for a prosecutor to make comments that prejudicially shift the burden of proof to the defendant. *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). "Such prosecutorial misconduct, if so pronounced and persistent that it permeates the entire atmosphere of the trial,

requires reversal." *Id.* (quotation omitted).  Consequently, "prosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." *Id.*  Finally, even if a prosecutor makes statements that could have resulted in shifting the burden of proof to the defendant, the errors can be cured by a court's instructions regarding the burden of proof since the jury is presumed to follow jury instructions.  *Id.* at 1087.

Soto cites two of the prosecutor's statements in support of his argument that the prosecutor shifted the burden of proof to him.  He refers first to the prosecutor's characterization of his defense as an effort to "distract" the jury from properly considering the Government's evidence.  We fail to understand how this statement somehow shifted the burden of proof.  Next, he refers to the prosecutor's response to his attack on the credibility of Diaz, Claro, and Lozada.  All the prosecutor did was to say that Soto's attorney failed to show where any of these witnesses told the jury a "lie."  Again, we fail to find any impropriety in the comment.  Nevertheless, even if we were to assume that the prosecutor did attempt to shift the burden, the court instructed the jury that the Government had the burden to prove Soto guilty beyond a reasonable doubt, that Soto was presumed innocent, and that Soto was not required to prove his innocence or produce any

11

evidence at all.  In sum, we find no merit in Soto's burden-shifting argument.

II.

Soto argues that his total sentence is procedurally and substantively unreasonable.  First, he contends that his sentence is procedurally unreasonable because the court erred in calculating his applicable Guidelines sentencing range in several respects.  Second, he asserts that his sentence is substantively unreasonable because he was entitled to a total sentence below the sentencing range.

Although the Sentencing Guidelines are now advisory after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the district courts are still required to calculate the advisory guidelines range correctly.  *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008).  At sentencing, the government has the burden to both prove the applicability of guidelines that enhance a defendant's sentence and to establish disputed facts by a preponderance of the evidence.  *United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004).  "The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing."  *Id.*

We review the reasonableness of a sentence under an abuse of discretion

standard. *Gall v. United States*, 552 U.S. 38, 46, 128 S.Ct. 586, 594, 169 L.Ed.2d 445 (2007). A defendant challenging his sentence bears the burden of establishing that it is unreasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). On appeal, the analysis of the reasonableness of a sentence is a two-step process. *Pugh*, 515 F.3d at 1190. First, we examine whether the district court committed any significant procedural error. Second, after it has been determined that a sentence is procedurally sound, we review the sentence's substantive reasonableness. *Id.*

When reviewing for procedural reasonableness, we ensure that the district court committed no significant procedural error, such as: (1) improperly calculating the defendant's sentencing range; (2) treating the Guidelines as mandatory; (3) failing to consider the 18 U.S.C. § 3553(a) factors; (4) selecting the sentence based on clearly erroneous facts; or (5) failing to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597.

On the other hand, a sentence is substantively unreasonable "if it does not achieve the purposes of sentencing stated in § 3553(a)." *Pugh*, 515 F.3d at 1191 (quotation omitted). The § 3553(a) factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to

13

protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

*Talley*, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)). The weight the district court accords to "any given § 3553(a) factor is a matter committed to the sound discretion of the district court . . . ." *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007) (quotation omitted). Moreover, there is an expectation of reasonableness when a district court imposes a sentence within the applicable guidelines range. *Talley*, 431 F.3d at 788.

A.      Whether Soto's total sentence is procedurally unreasonable

1.      Loss amount under U.S.S.G. § 2B1.1(b)(1)

Soto argues that the court incorrectly calculated his loss amount under § 2B1.1(b)(1). In this respect, he contends that the court made insufficient findings as to loss; he says that the proper loss amount was the actual loss of approximately $1.3 million Medicare suffered because nothing in the record indicates that he intended losses of around $4.5 million.

"A district court's determination regarding the amount of loss for sentencing purposes is reviewed for clear error." *United States v. Medina*, 485 F.3d 1291, 1303 (11th Cir. 2007) (quotation omitted). Overall, the court needs only to "make

14

a reasonable estimate of the loss amount." U.S.S.G. § 2B1.1, comment. (n.3(C)). Moreover, the court's loss determination is entitled to deference because "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon the evidence." *Id.* Nevertheless, a court cannot speculate concerning the existence of a fact that permits a more severe sentence under the Guidelines. *United States v. Patterson*, 595 F.3d 1324, 1327 (11th Cir. 2010).

"When the district court determines the loss calculation under the Guidelines, 'the loss is the greater of actual loss or intended loss.'" *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1343 (11th Cir. 2009) (quoting U.S.S.G. § 2B1.1, comment. (n.3(A))). "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, comment. (n.3(A)(i)). On the other hand, "intended loss" is the monetary harm "that was intended to result from the offense." *Id.*, comment. (n.3(A)(ii)).

Furthermore, U.S.S.G. § 1B1.3(a)(1) provides that for "jointly undertaken criminal activity," a defendant's base offense level shall be determined based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," that occurred during the preparation for, commission of, or in the course of attempting to avoid detection or responsibility for the offense of conviction. U.S.S.G. § 1B1.3(a)(1). Thus, where losses result

from a conspiracy, "the district court may hold all participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." *United States v. Dabbs*, 134 F.3d 1071, 1082 (11th Cir. 1998).

Soto has not demonstrated that the district court clearly erred by finding that the loss amount for his fraud was $4.3 million. Soto has failed to establish that it was not reasonably foreseeable that Med-Pro would submit $4.3 million in collectible claims to Medicare, which is greater than the amount of the actual loss. Thus, as a member of the conspiracy, he was responsible for Med-Pro's reasonably foreseeable actions taken in furtherance of the conspiracy and the larger intended loss amount of $4.3 million.

2.     Sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(9)(C)

Soto argues that the court improperly applied a two-level enhancement for use of sophisticated means, pursuant to § 2B1.1(b)(9)(C). Specifically, he contends that there was nothing especially complex or intricate about the conspirators' fraud and that it is "difficult to imagine" a less complex scheme to commit health care fraud. In addition, he claims that nothing in regard to the money-laundering scheme was sophisticated because the conspirators merely used individuals to cash checks and they did not even take precautions to avoid bank

16

security cameras.

We review a district court's finding that a defendant utilized sophisticated means for clear error. *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010). The Guidelines provide for an enhancement of two levels if the offense in question "involved sophisticated means." U.S.S.G. § 2B1.1(b)(9)(C). Application note 8(B) to that Guideline states that:

> "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1, comment. (n.8(B)). "There is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement. Rather, it is sufficient if the totality of the scheme was sophisticated." *Ghertler*, 605 F.3d at 1267.

Soto has not demonstrated that the district court clearly erred by finding that his offenses involved the use of sophisticated means. At trial, the Government presented evidence that, after Soto invested in Med-Pro, he worked to appoint Claro as Med-Pro's nominee owner in order to conceal his involvement in the fraud. In addition, Soto recruited several individuals to cash Med-Pro checks so

17

that they could further conceal his involvement.  Based on this evidence, the district court did not clearly err in finding that the conspiracy employed sophisticated means.

       3.      Soto's role in the offenses under U.S.S.G. §§ 3B1.1 and 3B1.2

Soto contends that the court clearly erred by applying a three-level increase under § 3B1.1(b) for being a manager or a supervisor, because the evidence merely indicated that he utilized a few acquaintances to cash checks and nothing suggested that he gave orders or recruited any individuals into the overall conspiracy.  Soto asserts that the evidence indicated that others were the managers or organizers, and thus, the court should have granted him a two-level minor-role reduction instead.

A district court's determination of a defendant's role in an offense is a finding of fact that we review for clear error.  *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (*en banc*).  Under U.S.S.G. § 3B1.1(b), a defendant receives a three-level increase in his offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive . . . ."  A "'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted."  U.S.S.G. § 3B1.1, comment. (n.1).  Factors that a court should consider in determining whether an aggravating-role

18

increase applies include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.*, comment. (n.4).

Conversely, a mitigating-role reduction under U.S.S.G. § 3B1.2 is available "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3(A)). Under § 3B1.2(b), a two-level reduction for playing a minor role is appropriate if the defendant is "less culpable than most other participants, but whose role could not be described as minimal." *Id.* § 3B1.2, comment. (n.5).

Soto fails to demonstrate that the court's finding as to his role in the offense was clear error. At trial, the Government presented evidence that, after Soto invested in Med-Pro, he and Diaz appointed Claro as a nominee owner, directed Claro's actions, recruited several individuals to cash Med-Pro checks, and directed those individuals in cashing checks. Thus, not only was the three-level increase for being a manager or supervisor appropriate, Soto has failed to demonstrate that the court clearly erred by denying him a two-level minor-role reduction.

### 4. Obstruction of justice under U.S.S.G. § 3C1.1

19

Soto argues that he should not have received a two-level increase for obstruction of justice under § 3C1.1. Soto asserts that his statement during an interview with the FBI misidentifying Claro in a picture as someone else, did not amount to obstruction of justice because the evidence indicated that Soto actually believed his identification was true.

When a district court imposes an obstruction-of-justice enhancement, we review the district court's findings of fact for clear error and the application of those facts to the Sentencing Guidelines *de novo*. *United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006). The Sentencing Guidelines provide that:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. One example of conduct covered by § 3C1.1 includes "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." *Id.* § 3C1.1, comment. (n.4(g)). An example of conduct not ordinarily covered by § 3C1.1 includes "making false statements, not under oath, to law enforcement officers, unless Application Note 4(g) . . . applies." *Id.* § 3C1.1, comment. (n.5(b)).

20

Soto fails to show that the district court erred by finding that a two-level

obstruction-of-justice enhancement applied. The Government presented evidence

that he intentionally misidentified a picture of Claro as depicting someone else.

After Soto's misidentification, the FBI investigated and interviewed the person

Soto identified to determine whether he had any involvement in the fraud. Because

Soto's misidentification impeded the investigation of the fraud, the two-level

enhancement was proper.

### 5. Evidentiary errors

Soto argues that the court erred by allowing, over his objections, irrelevant

evidence, hearsay, and testimony that violated the Sixth Amendment's

Confrontation Clause. Furthermore, in a footnote, he submits that his sentence

violates the Fifth Amendment because the facts supporting his enhancements were

not charged in his indictment, and he cites law suggesting that his sentence

enhancements violate the Sixth Amendment because they were not found by a jury.

In general, at sentencing, a court:

> may consider any information, (including hearsay), regardless of its
> admissibility at trial, in determining whether factors exist that would
> enhance a defendant's sentence, provided that the evidence has
> sufficient indicia of reliability, the court makes explicit findings of
> fact as to credibility, and the defendant has an opportunity to rebut the
> evidence.

*Baker*, 432 F.3d at 1253. Furthermore, we have stated that the Supreme Court's

21

decision in *Crawford*[1] did not address a sentencing court's use of hearsay and our decision "that a sentencing court may base sentencing determinations on reliable hearsay is still good law." *Id.* at 1254 n.68; *see also United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005) ("The right to confrontation is not a sentencing right."). Finally, there is no violation of the Fifth and Sixth Amendments where a district court "find[s] facts at sentencing so long as the judicial factfinding does not increase the defendant's sentence beyond the *statutory* maximum triggered by the facts conceded or found by a jury beyond a reasonable doubt." *Ghertler*, 605 F.3d at 1268 (quotation omitted).

Soto has failed to demonstrate that the court committed any evidentiary errors at sentencing. First, because a court can rely on any information at sentencing, provided that the evidence has sufficient indicia of reliability, the court makes sufficient findings as to credibility, and the defendant has the opportunity to rebut the evidence, Soto's mere assertion that court erred by allowing irrelevant evidence and hearsay does not establish error. Furthermore, because the right to confrontation does not apply at sentencing, and Soto was not sentenced beyond the statutory maximum, he has not establish a violation of the Fifth and Sixth Amendments. Accordingly, we affirm as to this issue.

---

[1] *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

22

B.     Whether Soto's total sentence is substantively unreasonable

Soto argues that his total sentence is substantively unreasonable because a downward variance from his applicable sentencing range was appropriate.  First, he claims that his "extraordinary family responsibilities" merit a total sentence below the sentencing range.  Second, he emphasizes that defendants in other Medicare fraud cases have received lesser sentences, and he notes that Diaz received a 60-month sentence, Lozada received a 46-month sentence, and Claro received a 31-month sentence.  Consequently, Soto asserts that a total sentence below the sentencing range was necessary to avoid an unwarranted sentencing disparity.  Finally, he contends that his loss amount overstates the seriousness of his culpability.

Soto has not shown that the district court abused its discretion by imposing a total sentence of 140 months' imprisonment.  Because he is not similarly situated to the other conspirators or defendants in other health care fraud cases, he cannot establish any unwarranted sentencing disparity.  Furthermore, the court determined that the need to punish him and deter others from criminal activity outweighed other § 3553(a) factors.  Thus, his mere disagreement with this analysis does not show that the court abused its discretion.  Finally, Soto's sentence falls within the Guidelines sentencing range, a sentence that we normally expect to be reasonable.

23

In sum, he fails to establish that his total sentence is substantively unreasonable.

## Conclusion

For the reasons we have stated, Soto's convictions and sentences are

AFFIRMED.