[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-12279

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DORITA CLAY,
a.k.a. Dorita West,
a.k.a. Dorita Browning,
a.k.a. Dorita Mial,
a.k.a. Dorita Moultrie,
a.k.a. Dorita Mobley,
a.k.a. Dorita Brooks,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:17-cr-00035-CDL-MSH-2

————————————

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Dorita Clay appeals her convictions for 21 counts of wire fraud, in violation of 18 U.S.C. § 1343, and a single count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. She also appeals her 96-months' imprisonment sentence.

Clay argues three issues on appeal: (1) whether the district court abused its discretion by improperly entering an unredacted copy of Darlene Corbett's, a testifying co-defendant, plea agreement into evidence; (2) whether the government made improper comments during its closing argument that substantially prejudiced Clay; and (3) whether the district court's application of an upward variance to Clay's sentence based on its finding that she lacked remorse was procedurally and substantively unreasonable. Because we find no error, we affirm.

We will address each issue in turn. Because the facts of this case are well known to the parties, we do not recount them except as necessary to our disposition of each issue.

I.

First, Clay argues that the district court abused its discretion by entering an unredacted copy of Corbett's plea agreement into evidence.

We review the district court's rulings on the admissibility of evidence for an abuse of discretion. *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).

At the start of Corbett's testimony, the government questioned her about her plea agreement. Corbett confirmed that she pleaded guilty to conspiring with Clay to commit fraud, acknowledging that she faced a possible 20-year prison sentence. The government then introduced the plea agreement into evidence. Though noting that she did not "really have a problem with using the plea agreement," Clay objected to the plea agreement being admitted as an exhibit because she argued that it contained hearsay and a factual stipulation that restated the government's case. The district court overruled the objection but gave a cautionary instruction to the jury. The government then showed portions of the plea agreement to the jury. Corbett confirmed that she agreed to testify truthfully in exchange for the government's promise to ask the district court to credit her cooperation at her sentencing. On cross-examination, Clay used the plea agreement to impeach Corbett's testimony.

On appeal, Clay contends that the district court's instruction to the jury was insufficient because the district court did not

4                    Opinion of the Court                    19-12279

specifically state that the jury could not use the plea agreement for substantive purposes. Therefore, Clay asserts that the jury was able to use the entire plea agreement as substantive evidence against her, creating reversible error.

In general, "[o]ne person's guilty plea or conviction may not be used as substantive evidence of the guilt of another." *United States v. King*, 505 F.2d 602, 607 (5th Cir. 1974).[1] However, a co-defendant's guilty plea is admissible at trial provided that "the evidence serves a legitimate purpose" and "the jury is properly instructed about the limited use they may make of it." *United States v. DeLoach*, 34 F.3d 1001, 1003 (11th Cir. 1994) (per curiam). Two examples of proper evidentiary use of such plea agreements include (1) to impeach trial testimony and (2) to reflect on a witness's credibility. *Id.* at 1004.

We find that the district court did not abuse its discretion by admitting Corbett's plea agreement into evidence. The government introduced the plea agreement not for the facts it recited but to bolster Corbett's credibility by showing that she was obligated to testify truthfully. Though generally, the government should not do that before the witness's credibility is attacked, *United States v. Hilton*, 772 F.2d 783, 787 (11th Cir. 1985); *see also* Fed. R. Evid. 608(a), Clay did not object during trial on that basis, so she forfeited

---

[1] All decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

that opportunity. *See id.* Nor does Clay argue on appeal that the government improperly bolstered Corbett's credibility. Moreover, the district court instructed the jury that the plea agreement was "strictly an agreement between [Corbett] and the government [and] not proof of anything that Ms. Clay may have done." This cautionary instruction directed the jury not to consider Corbett's plea agreement as substantive evidence of Clay's guilt. Absent any showing from Clay of the existence of aggravated circumstances, the instruction cured the potential for prejudice. *United States v. Carrazana*, 921 F.2d 1557, 1568 (11th Cir. 1991) ("[A] cautionary instruction directing the jury not to consider a guilty plea as substantive evidence of guilt will sufficiently cure any potential for prejudice to the defendant on trial.").

Finally, because the evidence independent of the plea agreement was itself sufficient to support the verdict, any error that might have resulted was harmless. *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990). The information contained in the factual stipulation mirrored the testimony at trial. Thus, admission of the plea agreement did not substantially impact the outcome of the trial and hence did not affect Clay's substantial rights. *Id.* Accordingly, we find that the district court did not err in entering an unredacted copy of Corbett's plea agreement into evidence.

## II.

Second, Clay argues that the government's statements in its closing arguments substantially prejudiced her such that she is entitled to a new trial.

6                    Opinion of the Court                    19-12279

We generally apply de novo review to allegations of prosecutorial misconduct because they raise a mixed question of law and fact. *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). But "[w]hen a defendant fails to object to the prosecutor's closing argument, relief is available to rectify only plain error that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial." *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997).

Prior to closing arguments, the district court told the jury members that the lawyers' respective arguments were not evidence and that the government had the burden of proof in the case. During its closing argument, the government argued, *inter alia*, that Clay had attempted to defraud the jury during her testimony. In so doing, the government described Clay as a "pill junkie" and a "flimflam artist" who "flimflammed probably a billion people." The government also noted the speed of the trial, attributing it to Clay's failure to "challenge any of [the government's] evidence . . . [or] impeach any of [its] witnesses."

At the start of its rebuttal, the government stated that it "ha[d] the burden . . . [a]nd the burden is beyond a reasonable doubt." It described Clay as "a mean-spirited client with a bad story" and commented that "[t]his is the most empty courtroom I've ever seen for a defendant." After the government's rebuttal, the district court reminded the jury that "[t]he defendant does not have to prove her innocence or produce any evidence at all," but that "[t]he government must prove guilt beyond a reasonable

doubt."  Defense counsel did not object to the government's closing argument or rebuttal.

To assess the prejudicial impact of the government's statements, we evaluate them in the context of the trial as a whole and assess their probable impact on the jury.  *United States v. Hernandez*, 145 F.3d 1433, 1438 (11th Cir. 1998).  Nonetheless, prosecutorial misconduct requires a new trial only where the remarks were improper and prejudiced the defendant's substantial rights.  *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999).  Further, generally, prejudice resulting from the government's improper statements during closing can be cured by instructions from the district court that the government's arguments are not evidence, and the jury must base its decision solely on the evidence presented at trial.  *Bailey*, 123 F.3d at 1402.  And the jury is presumed to follow the curative instructions that it receives from the district court.  *United States v. Almanzar*, 634 F.3d 1214, 1223 (11th Cir. 2011).

There "is no prohibition on colorful and perhaps flamboyant remarks if they relate to the evidence adduced at trial."  *Bailey*, 123 F.3d at 1400 (internal quotation marks omitted).  And an "unflattering characterization[] of a defendant will not provoke a reversal when such descriptions are supported by the evidence."  *United States v. Tisdale*, 817 F.2d 1552, 1555 (11th Cir. 1987) (per curiam).  But during its closing argument, the government "must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury might draw from it and the impermissible practice of arguing suggestions beyond the

evidence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992).

On appeal, Clay argues that the government's statement that the trial moved quickly because she did not challenge its evidence improperly shifted the burden of proof to her from the government. She also claims that the government's statement that she "flimflammed probably a billion people" constituted improper speculation about bad acts not in the record or charged in the indictment. Clay further contends that the government made multiple improper statements, including referring to her as a "pill junkie" and speculating about the lack of individuals present in the courtroom to support her. She finally argues that the government's improper statements, which were "calculated to mislead the jury," cumulatively resulted in substantial prejudice even if they did not on an individual basis. We disagree.

Because defense counsel did not object to any of the above statements, we apply plain error review. *Bailey*, 123 F.3d at 1400. Under this level of review, a prosecutor's comments may only be the basis of reversal "if they result in prejudice affecting the substantial rights of the defendant." *Id.* Here, Clay fails to establish that the contested statements constitute plain error because she does not show that she was so prejudiced.

Clay first argues that the government's comment that Clay "flimflammed probably a billion people" had the prejudicial effect of "rais[ing] speculation that was passed on the jury . . . that [Clay] had committed one billion bad acts that were not in the

record . . . ."  Although the government cannot argue suggestions beyond the evidence, *Simon*, 964 F.2d at 1086, and this remark was improper, it would have been clear to anyone listening that this was a hyperbolic remark, not a factual or inferential one.  And Clay does not provide support for her improbable allegation that the "billion people" remark had misled the jury into believing that she had actually committed a billion other bad acts.  To justify reversal, the challenged statement must be not only improper, but must also prejudicially affect a substantial right of the defendant.  *United States v. Obregon*, 893 F.2d 1307, 1310 (11th Cir. 1990) (citations omitted).  Clay does not make any factual allegations on appeal that would tend to produce the necessary showing that, but for the utterance, the outcome of the trial would have been different.  *United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998).

We similarly dispense with Clay's allegations concerning a litany of other statements made by the government at closing.  The government's statements that Clay was a "pill junkie" and a "flim-flam artist" were also not improper because the government "was merely drawing these conclusions from the record."  *United States v. Azmat*, 805 F.3d 1018, 1045 (11th Cir. 2015).  Likewise, the government's description of Clay as a "mean-spirited client," while unflattering, is supported by the evidence and thus was not improper. *United States v. Windom*, 510 F.2d 989, 994 (5th Cir. 1975).  And we have held more inflammatory statements insufficient to warrant reversal.  *See, e.g., Tisdale*, 817 F.2d at 1555 (affirming a conviction where the prosecutor described the defendant as a "dirty,

low-life criminal"). The government's comment regarding the fact that "[t]he only family that appeared for [Clay] testified against her" was not improper because the record reflects that both her ex-husband and her sister-in-law indeed testified against her at trial. *See Windom*, 510 F.2d at 994. As for its remark about the "empty courtroom," that was improper. There can be many reasons why a defendant does not have supporters in the gallery during a trial, from financial reasons to personal reasons, and the fact that the courtroom was empty was not relevant to anything the government had to prove. Nevertheless, Clay has not shown that the remark substantially influenced the outcome.

Clay makes another argument here: even if the allegedly problematic statements were not prejudicial in isolation, "when taken together as a whole, [they] resulted in substantial prejudice." Indeed, we may consider the cumulative impact of multiple instances of prosecutorial misconduct to determine whether reversal is warranted even where individual instances are themselves insufficient. *United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir. 2009).

But here, the challenged remarks could not have affected Clay's substantial rights for two reasons: (1) she does not show that the alleged errors substantially influenced the outcome and (2) sufficient evidence not infected by errors supported Clay's guilty verdict. *Hawkins*, 905 F.2d at 1493. On the first point (and the second), the record contains more than sufficient independent evidence of Clay's guilt, which counteracts any potential prejudice caused by the government's remarks. *See United States v. Frank*,

599 F.3d 1221, 1238–39 (11th Cir. 2010).  And beyond that, on this record, the district court's instructions to the jury cured any potential prejudice from the government's comments to the extent they could have otherwise impacted the outcome.[2]  *Bailey*, 123 F.3d at 1402; *Almanzar*, 634 F.3d at 1223.

Accordingly, we find that certain statements during the government's closing argument did not substantially prejudice Clay.

III.

Last, Clay argues that her 96-month sentence was procedurally and substantively unreasonable because the record does not support the district court's reasoning that Clay's lack of remorse justified its application of an upward variance to her sentence.

We review the reasonableness of a sentence, whether inside or outside the Federal Sentencing Guidelines range, under a deferential abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 41 (2007).  This standard is applied to the review of both the procedural and substantive reasonableness of sentences imposed by the district court.  *Id.* at 51.

The jury found Clay guilty of 22 of the 23 total charges for which she was indicted.  With a total offense level of 23 and a criminal history category of IV, the resulting Guidelines range in Clay's

---

[2] "[A]ny potential prejudice regarding burden-shifting was diminished by the prosecution's statement in their closing argument that the burden of proof was theirs to carry and by the trial court's explicit instruction after closing arguments to that same effect." *Hernandez*, 145 F.3d at 1439.

presentence investigation report (PSI) was 70 to 87 months' incarceration, with a statutory maximum term of imprisonment for each count of conviction of 20 years. The PSI also determined that, under 18 U.S.C. § 3663A, Clay was required to pay restitution totaling $947,718.50.

In discussing Clay's total sentence, the district court stated that it considered the Guidelines range and each of the 18 U.S.C. § 3553(a) factors. It found that an upward variance was appropriate because of Clay's lack of remorse because despite the "overwhelming" evidence presented against her at trial, she "continue[d] to deflect responsibility," making her a "dangerous person." Consequently, the district court varied upward from the Guidelines range of 70 to 87 months and sentenced Clay to a total of 96-months' imprisonment, followed by three years' supervised release. The district court then asked Clay if she had any additional objections, but she declined.

Whether the sentence is procedurally reasonable is an analysis to ensure that the district court committed no "significant procedural error," such as, but not limited to, improperly calculating the Guidelines range, treating the Guidelines as mandatory, basing a sentence on "clearly erroneous facts," or failing to explain the sentence as chosen. *Gall*, 552 U.S. at 51. Where a defendant did not object to the procedural reasonableness of the sentence imposed, we review for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014).

In review of the substantive reasonableness of a sentence, we find that the district court has abused its discretion and imposed a substantively unreasonable sentence in only the instance that it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010). The proper factors include, but are not limited to, the history and characteristics of the defendant, the seriousness of the offense, and adequate deterrence. 18 U.S.C. § 3553(a)(1)–(2).

The party challenging the sentence bears the burden of establishing that it is unreasonable based on the record and the § 3553(a) factors. *United States v. Delva*, 922 F.3d 1228, 1256 (11th Cir. 2019). The district court has broad discretion to decide whether the § 3553(a) factors justify a variance. *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010), *abrogated on other grounds by Van Buren v. United States*, 141 S. Ct. 1648 (2021). The district court also has the discretion to determine how much weight to give each factor and "is permitted to attach great weight to one factor over others." *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021) (internal quotation marks omitted). Additionally, "[a] district court is permitted to consider lack of remorse in its § 3553(a) analysis as to several factors, such as the characteristics of a defendant, the need to promote respect for the law, and the

need to protect society." *United States v. McNair*, 605 F.3d 1152, 1231 (11th Cir. 2010).

When the sentence imposed by the district court is outside the Guidelines range, "the justification for the variance must be sufficiently compelling to support the degree of the variance." *Irey*, 612 F.3d at 1186 (internal quotation marks omitted). This explanation need only be adequate "to satisfy the appellate court that [the sentencing court] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). We may not presume that a sentence outside of the Guidelines range is unreasonable, but rather must give deference to the district court's decision that the § 3553(a) factors support its chosen sentence. *Irey*, 612 F.3d at 1187.

On appeal, Clay argues that the upward variance was procedurally and substantively unreasonable. She argues that the district court's finding of a lack of remorse, upon which it justified the variance, was not supported by the record. She further asserts that the district court did not offer any facts or specific reasoning in support of its finding of a lack of remorse. We find that Clay's sentence was not procedurally or substantively unreasonable because the district court was entitled to consider her lack of remorse when imposing an upward variance, and it sufficiently explained its reasoning.

The record supports the district court's finding that Clay lacked remorse because, at trial, she repeatedly claimed evidence produced by the government at trial was fabricated and refused to

acknowledge her culpability even at sentencing.  Further, the district court was permitted to consider her lack of remorse in its § 3553(a) analysis, *McNair*, 605 F.3d at 1231, and had the discretion to weigh it more heavily than other factors, *Riley*, 995 F.3d at 1280.  Additionally, while the district court did not discuss each of the § 3553(a) factors in detail, it stated that it considered each factor, which we have previously held is sufficient to establish that the district court considered them.  *United States v. Isaac*, 987 F.3d 980, 994–95 (11th Cir. 2021).  And the district court's explanation of its reasoning was sufficient to establish it had a reasoned basis for its decision.  *Rita*, 551 U.S. at 356.  Finally, the fact that Clay's 96-months' total sentence is well below the statutory maximum of 20 years is further evidence of its reasonableness.  *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014).

Thus, we find that the district court did not abuse its discretion in applying an upward variance to Clay's sentence.

**AFFIRMED.**